J-S66013-19

2020 PA Super 117

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| T.B. | : | |
| | : | |
| Appellant | : | No. 2294 EDA 2018 |

Appeal from the Judgment of Sentence entered July 24, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-CR-0006214-2017

BEFORE:  STABILE, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

OPINION BY STABILE, J.:                           **FILED MAY 18, 2020**

Appellant, T.B., appeals from his judgment of sentence of nine to eighteen years' imprisonment for rape of a child, unlawful contact with a minor, aggravated indecent assault of a child, indecent assault of a person less than thirteen years old, and endangering the welfare of a child.[1]

> The trial court summarized the evidence adduced during trial as follows:
> On June 12, [2017],[2] at approximately 4:30 p.m., [T.B., the victim's mother ("Mother")[3]], Donald Myers (Mother's husband), and Myers' son left their apartment at 2601 North 6th Street to run some errands.  Appellant (the victim's father), who had been temporarily living with [Mother] and Myers, was left to supervise the [five-year-old] victim ("L.B.").  While supervising [L.B.],

---

[1] 18 Pa.C.S.A. §§ 3121(c), 6318(a)(1), 2705, 3126(a)(7) and 4304(a)(1), respectively.

[2] The trial court misidentified the year as 2018 in its opinion.

[3] Appellant and the victim's mother have the same initials, T.B.  To avoid confusion, we refer to the victim's mother as "Mother."

Appellant used lotion to digitally penetrate L.B.'s vaginal area. Appellant also penetrated L.B.'s labia with his penis.

[Mother], Myers, and their son returned approximately 30 minutes later. [Mother] entered the apartment first and saw Appellant sitting on a couch in the living room with his shirt undone and the zipper of his pants down. Moreover, L.B. was not wearing any pants, and her underwear was hanging around one leg. A bottle of lotion was on the couch. Myers made the same observations as [Mother]. [Mother] asked Appellant what he had done and quickly grabbed a shirt to cover L.B. [Mother] then took L.B., who began crying, to another room to question her about what had occurred. When asked whether Appellant had hurt her, L.B. replied, "yes, and that it was hurting, and she asked him to stop." [Mother] asked L.B. where Appellant had touched her, and she pointed to her vaginal area. [Mother] then ran from the bedroom and hit the Appellant in the head.

[Mother] subsequently called the police, and Officer Matthew McCarthy responded. After [Mother] described what she had witnessed, Officer McCarthy took L.B. into a bedroom alone and asked her to describe what had occurred. L.B. told him that Appellant had touched her "woo-woo." When McCarthy asked L.B. to point to her "woo-woo," she indicated her crotch area. Appellant was subsequently arrested, and L.B. and her family were taken to the Special Victims Unit ("SVU"). While at SVU, L.B. spoke with a forensic interviewer (Carolina Castano) about what had occurred. L.B. was then taken to St. Christopher's Hospital for a physical examination and sexual abuse testing.

Trial Court Opinion, 4/23/19, at 3-4.

The four eyewitnesses to the incident at the apartment testified during trial. Three of these witnesses—L.B., Mother, and Myers—accused Appellant of sexual assault. The fourth witness, Appellant, denied any wrongdoing, and he also presented character witnesses who testified as to his reputation in the community for being law-abiding and peaceful. There was no physical

evidence of sexual abuse. Castano, a forensic interview specialist who interviewed L.B., testified for the Commonwealth as a fact witness.

Following a four-day trial, the jury found Appellant guilty of all charges. After sentencing, Appellant filed this timely appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

[1.] Did the court err in allowing a lay witness to give expert testimony?

[2.] Did the court err in allowing the prosecutor to ask a leading question regarding a crucial part of testimony that had been previously answered twice in the negative which prejudiced Appellant?

Appellant's Brief at 3.

In his first argument, Appellant asserts that the trial court erred by permitting a Commonwealth witness, Carolyn Castano, to give expert testimony relating to her forensic interview with L.B. without qualifying her as an expert. Appellant claims the trial court permitted Castano to offer an expert opinion that L.B. was a victim of sexual assault based upon the Team Interview Summary Report (Exhibit CW-8) she completed after interviewing L.B. Appellant claims the trial court permitted the testimony after it determined Castano was qualified to do so based upon her experience interviewing over 1,000 children in the past and her observations of them during the interview process. Appellant's Brief at 10. There is no indication in the record that the Commonwealth notified Appellant prior to or during trial

that it intended to present Castano as an expert witness. Nor did the Commonwealth request during trial that the court find Castano qualified to give expert testimony. We review this issue for abuse of discretion. ***Commonwealth v. Yocolano***, 169 A.3d 47, 61, 63 (Pa. Super. 2017). "Discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 316 (Pa. Super. 2019).

The record reveals that Castano is a forensic interview specialist for the Philadelphia Children's Alliance ("PCA"), which she described as a "nonprofit organization that provides a multidisciplinary response to people who may have been victims of abuse." N.T., 3/29/18, at 4-5. PCA "conduct[s] interviews," "provide[s] therapy [and] victim advocacy," and "ha[s] an onsite clinic." *Id.* at 5. At the time of trial, Castano had been a PCA employee for three years. *Id.* She has a master's degree in forensic science from Drexel University and has participated in a forty-hour program at the National Children's Advocacy Center in Huntsville, Alabama. *Id.* at 6. She participates in continuing education to learn the most up-to-date research on forensic interviewing, the nature of the disclosure process, and age-appropriate and developmentally-appropriate children's behaviors. *Id.* at 6-7.

On June 12, 2017, Castano conducted a videotaped forensic interview with L.B. Castano identified Exhibit CW-24 as a videotape of her forensic

interview with L.B. *Id.* at 12. The video was played for the jury. *Id.* at 13.

Castano identified Exhibit CW-8 as the Team Interview Summary Report that

she prepared after interviewing L.B. *Id.* at 11. In a section of the report

entitled "Forensic Interview Impressions," Castano checked off a box that L.B.

"provided sensory details" of the incident. *Id.* When asked to explain the

significance of this detail, Castano testified as follows:

> **COMMONWEALTH**: Can you just explain to us why you checked the box for sensory detail? **What is a sensory detail and why did you check it?**
>
> **CASTANO**: So during a forensic interview, some of the information we're looking for is anything that answers questions about any of the senses. The way things smell, the way things felt, any sounds which L.B. provided a lot of that during her interview.
>
> **COMMONWEALTH**: **Why is that significant**?
>
> **CASTANO**: It goes to a child's ability to describe—
>
> **DEFENSE COUNSEL**: Your Honor, this is the backdoor way to get in expert testimony. I'm going to object.
>
> **THE COURT**: All right. I'll give her a little latitude and if she continues, counsel, you can object and I probably will sustain the objection. We'll give her a little bit.
>
> **COMMONWEALTH**: Can you just—to the last question finish that answer.
>
> **CASTANO**: Sure. So a child's ability to describe a situation with that much detail—
>
> **DEFENSE COUNSEL**: Your Honor, I'm going to object because this is like child psychology and I'm—
>
> **THE COURT**: I just made my ruling, counsel. You may answer.

**CASTANO**: So a child's ability—

**THE COURT**: You've done over 1,000 forensic interviews, right?

**CASTANO**: Yes, I have.

**THE COURT**: So you're qualified to answer this question.

**CASTANO**: **A child's ability to describe a situation, including details of how something sounded or something tasted or something felt, speaks to an experience having occurred.**

*Id.* at 16-18 (emphasis added).

In rejecting Appellant's first argument, the trial court in its Pa.R.A.P. 1925 opinion stated:

> Castano's testimony was relevant to explain to the jury about the information and techniques she used to conduct her forensic interview. The court did not abuse its discretion when allowing Castano (a qualified forensics expert) to testify about the information she considered when interviewing L.B. Moreover, Castano's testimony merely helped the jury to better understand how L.B. was interviewed.

Trial Court Opinion, 4/23/19, at 13. We find no abuse of discretion in this ruling.

In sexual assault cases, expert testimony is governed by 42 Pa.C.S.A. § 5920, which states in pertinent part:

> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

*Id.* It cannot be disputed that if offered as an expert, Castano would have been qualified to offer an opinion regarding victim responses and behaviors to sexual violence. As stated, Castano was not offered as an expert to provide expert opinions. However, the failure to qualify Castano as an expert did not preclude her from explaining why the interview explores sensory detail. Pennsylvania Rule of Evidence 701, regarding "Opinion Testimony by Lay Witnesses" provides,

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. "[T]echnical expertise does not *ipso facto* convert a fact witness, who might explain how data was gathered, into an expert witness, who renders an opinion based on the data[.]" ***Branham v. Rohm & Haas Co.***, 19 A.3d 1094, 1110 (Pa. Super. 2011). "Fact testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her

testimony." ***Brady by Brady v. Ballay***, 704 A.2d 1076, 1082 (Pa. Super. 1997).

In ***Branham***, a case we find instructive, the Dow Chemical Company appealed from an order denying its motion to quash a subpoena to compel the deposition of a Dow corporate designee concerning vinyl chloride studies and related communications upon the basis that the subpoena sought to compel expert testimony. The issue required that we examine the record to determine whether the objected-to material constituted expert opinion. In rejecting Dow's claim, we held that the appellee was not seeking a Dow witness to render an opinion on the data, or testify about hypothetical situations based on the data. Rather, the appellee was *seeking factual evidence of how the studies were composed* and why certain individuals may have been excluded. We rejected Dow's claims that a witness with technical proficiency would be required to explain the study data. In doing so, we held that

> technical expertise does not *ipso facto* convert a fact witness, who might explain how data was gathered, into an expert witness, who renders an opinion based on the data. Factual evidence of a scientifically flawed or manipulated study, *vel non*, is readily distinguishable from subsequent expert testimony rendering an opinion on the consequences of any such facts.

***Id.*** at 1110. We concluded that the trial court's determination that the appellee was not seeking expert testimony from Dow was reasonable and supported by the record, and that there was no error of law or abuse of discretion.

We followed **Branham** in **Crespo v. Hughes, M.D.**, 167 A.3d 168 (Pa. Super. 2017), where we held that, under Pa.R.E. 701, it was not error for a plastic reconstructive surgeon who treated plaintiff to clarify a note on his medical records regarding the cause of devitalization in the plaintiff's fingers. The surgeon testified that "[he] felt that the treatment rendered previously and the acid caused these injuries." **Id.** at 182. The surgeon was asked only to clarify his own notes on medical records that he made at the time of rendering treatment to plaintiff as a treating physician. **See also Deeds v. University of Pennsylvania Medical Center**, 110 A.3d 1009 (Pa. Super. 2015) (physician testimony that plaintiff did not have preeclampsia was based on his treatment and observation of plaintiff, and was helpful to a clear understanding of his testimony; physician did not render any opinion as to whether there was violation as to standard of care, and therefore, trial court did not err in admitting his testimony as factual).

Instantly, we do not find that the trial court abused its discretion in admitting Castano's testimony. The Team Interview Summary Report was admitted into evidence. Castano was asked to explain how the interview of L.B. was conducted, the use of the interview form, and the processes underlying the forensic interview. In essence, as in **Branham**, the Commonwealth was seeking factual evidence of how the study, or interview here, was composed. Castano was asked to explain what sensory detail is and why that is important to an interview. She appropriately explained that

sensory detail speaks to an experience having occurred. She did not offer any opinion testimony, and in particular, any opinion that based upon L.B.'s report of sensory detail that L.B. was the victim of sexual abuse by the Appellant. Her testimony regarding the incorporation of sensory detail in a forensic interview was helpful to a clear understanding of L.B.'s interview. The fact Castano possessed the qualifications of a forensic examiner to explain the technical details of a forensic interview for the jury's understanding of that process did not require that she first be qualified as an expert to render expert opinion testimony. The trial court's recognition that Castano was qualified to answer the question regarding the significance of sensory detail in a forensic interview merely acknowledged the witness possessed the necessary foundation to respond to the inquiry. Castano's technical expertise did not convert her from a fact witness into an expert witness. As in **Branham**, Castano testified as to how the interview was composed. Moreover, in its instructions to the jury the court expressly admitted two other witnesses as experts in specific fields,[4] and later gave detailed instructions about the parameters of their testimony.[5] N.T., 4/2/18, at 171. Importantly, the

_____

[4] N.T., 3/29/18, at 56 (court declared Marita Lind, M.D. an expert "in the field of child sexual abuse and pediatrics"); N.T., 4/2/18, at 5 (court stated that Craig Judd "is a forensic DNA analyst and . . . an expert to testify in that field").

[5] During closing instructions, the court charged the jury as follows:

identification of those experts and the instruction given did not mention Castano. Appellant is not entitled to relief on his first issue.

_____

> The next charge is one as it relates to expert testimony. That charge is as follows. I permitted Dr. Marita Lind and also Craig Judd, the forensic scientist, to testify as expert witnesses. An expert witness is a person who has special knowledge or skill in some science, art, profession, occupation or subject that the witness acquired by training, education or experience. Because an expert has "special," that is "out of the ordinary knowledge or skill," he or she may be able to supply jurors with specialized information, explanations, and opinions that will help them decide a case. Regular witnesses are bound by two limitations that do not apply to an expert. First, regular witnesses generally can testify only about things that they personally perceived, that is things that they saw or heard themselves. Second, regular witnesses are not allowed to express opinions about matters that require special knowledge or skill. By contrast, an expert is allowed to express an opinion about a matter that is within the area of his or her expertise. Furthermore, while an expert may base an opinion on things personally perceived, he or she may also base an opinion on factual information learned from other sources. If an expert witness bases an opinion on things not personally perceived, he or she can describe the information on which he or she relies and identify its source when explaining the opinion. However, remember that you, jurors, are the sole judges of the credibility and the weight of all testimony. The fact that the lawyers and I may have referred to certain witnesses as experts and that the witnesses may have special knowledge or skill does not mean that their testimony and opinions are right. When you are determining the credibility and weight of an expert's testimony and opinions, consider all the factors which I described earlier that are relevant when evaluating the testimony of any witness. You should also consider all other things bearing on credibility and weight including the training, education, experience and ability of each expert, the factual information on which he or she based an opinion, the source and reliability of that information and the reasonableness of any explanation he or she gave to support the opinion.

N.T., 4/2/18, at 171-73.

- 11 -

In his second and final argument, Appellant asserts the trial court committed reversible error when it allowed the Commonwealth to ask L.B. leading questions. Specifically, Appellant directs our attention to the following line of questioning by the Commonwealth, as permitted by the trial court:

**Commonwealth:** Okay. And when you say that [Mother] came in and your clothes were off, which clothes were off?

**L.B.:** My pants.

**Commonwealth:** Okay. Whether they all the way off or just a little bit off or something different?

**L.B.:** All the way off.

**Commonwealth:** Okay. Were you wearing any underwear?

**L.B.:** Yes.

**Commonwealth:** Was your underwear on or off or something different?

**L.B.** Off.

**Commonwealth:** How did your pants get taken off?

**L.B.:** Pop-pop [Appellant] took them off.

**Commonwealth:** Did he say why?

**L.B.** No.

**Commonwealth:** Okay. After pop-pop took your pants off, did something happen next?

**L.B.:** No.

**Commonwealth:** Okay. How were pop-pop's clothes when your pants were off?

**L.B.:** His clothes was unbuttoned.

- 12 -

**Commonwealth:** Okay. When you say his clothes were unbuttoned, which clothes?

**L.B.** His pants.

**The Court:** Try to keep your voice up, okay?

**L.B.:** Uh-huh.

**Commonwealth:** All right. And did something happen to your body when your clothes were off and pop-pop's pants were undone?

**L.B.:** No.

**Commonwealth:** Did something happen that you didn't like while—

**Defense Counsel: objection, asked and answered, Your Honor**.

**The Court:** I'll allow this question.

N.T., 3/29/18, at 53-54. At this point in her testimony L.B. then went on to testify that Appellant took baby lotion and put it inside of her "jay-jay" (her vagina) with his fingers and that it "hurt." *Id.* at 56-57.

Initially, we observe trial counsel did not preserve this issue. The objection counsel raised during trial was that the question "Did something happen that you didn't like while—" was asked and answered. The argument presented now on appeal is that the question was leading. Failure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal. *Commonwealth v. Pearson*, 685 A.2d 551, 555 (Pa. Super. 1996) (citing Pa.R.A.P. 302(a)). Further, a litigant may not raise a new theory for

an objection made at trial in his appeal. *Id.* Nonetheless, we would find no abuse of discretion in the trial court permitting the question asked. The court explained that interrogated children sometimes get confused and self-correct. In the above testimony, a child victim, L.B., described Appellant undressing her and himself. It was obvious L.B. did not understand what the prosecutor was asking when asked if something happened to her body. The court allowed the Commonwealth to rephrase the question to inquire whether something happened that L.B. did not like. This prompted L.B. to describe the remainder of the sexual assault. The prosecutor did not unfairly influence L.B.'s testimony but merely clarified the record. Opinion at 17. Further, were we to address Appellant's argument that the question was leading, we would find no merit to the issue. A leading question is one that puts the desired answer in the mouth of the witness. *Commonwealth v. Chambers*, 599 A.2d 630, 640 (Pa. 1991). The question asked by the Commonwealth, "Did something happen that you didn't like while—", was not a leading question. It did not suggest to L.B. that she was sexually assaulted by Appellant. The issue warrants no relief.

Judgment of sentence affirmed.

President Judge Emeritus Ford Elliott joins the opinion.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/18/20