J-S21022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTHONY ESTAVON FERNANDEZ | : | |
| | : | |
| Appellant | : | No. 1478 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 3, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003722-2020

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: OCTOBER 23, 2023**

Appellant Anthony Estavon Fernandez appeals from the judgment of sentence imposed entered following his conviction for one count of aggravated indecent assault, one count of corruption of a minor, and two counts of indecent assault.[1]  Appellant argues that the trial court abused its discretion in admitting evidence of electronic messages[2] and also claims that the trial court's curative jury instruction was insufficient to overcome the prejudice. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3125(a)(1), 6301(a)(1)(ii), and 3126(a)(1) respectively.

[2] We note that although the parties and the trial court use the terms "text message," "Facebook instant message," and "Facebook message" interchangeably to refer to the communications between Ms. Fernandez and Appellant, for purposes of clarity, we will refer to these communications as "Facebook messages."

The trial court summarized the relevant facts and procedural history of this matter as follows:

> In 2019, Appellant and his family moved from Utah to York, Pennsylvania. At the time, Appellant lived with his wife, Shelise Fernandez, [his stepdaughter (D.W.)], and the three biological children . . . between Appellant and Ms. Fernandez.
>
> During the trial, D.W. testified that on or about September 23, 2019, Appellant and D.W. were watching [television] in Appellant's room. D.W. testified that she was sleeping and was awoken by Appellant rubbing and grabbing her butt. Ms. Fernandez was in the room as well. The following day D.W. told Ms. Fernandez about the incident, and D.W. thought that her mother would resolve the incident.
>
> D.W. also testified about an incident that happened on May 24, 2020. At the time, Appellant was an on-the-road truck driver. D.W. stated that she did not remember the day of the week but remembered the incident. D.W. testified that the family was having a movie night, and Appellant and Ms. Fernandez were drinking during that time. D.W. put the kids to sleep that night.
>
> After D.W. put the kids to sleep, D.W. came down to the couch with Ms. Fernandez and Appellant. D.W, described the couch as a U shape and that they (D.W., Appellant, and Ms. Fernandez) were lying on the couch. After Ms. Fernandez fell asleep, D.W. and Appellant were watching anime. D.W. described the position of Appellant relative to D.W.
>
> D.W. was lying vertically along the long side of the U-Shaped couch. Appellant was lying along the bottom of the U-Shaped sofa in away where his head was near D.W.'s head. When D.W. began to fall asleep, Appellant positioned his body in a way that D.W. interpreted as cuddling. Appellant then began fondling D.W.'s breast while D.W.'s shirt was on and eventually contacted the skin with his other hand.
>
> Appellant then moved his hand south along D.W.'s body and began to rub the vagina area of D.W. D.W. testified that it started over the top of her clothes, and then Appellant placed his hands in D.W.'s pants, ultimately placing his fingers inside her vagina.

D.W. stated that she never consented to Appellant touching her in a sexual manner and that she felt scared and fearful of the Appellant during the ordeal. After Appellant stopped, D.W, stated that Appellant told D.W. that she could not tell anyone about what happened because it would tear the family apart. The next day D.W. approached her mom about what Appellant did the night prior.

Ms. Fernandez testified that after speaking with D.W., she went into the kitchen while Appellant was on a phone call. Appellant gave a gesture towards Ms. Fernandez that he was busy. Ms. Fernandez wrote on the board near the refrigerator, "You touched my daughter; you're going to jail!" Appellant ended his business call and addressed Ms. Fernandez's allegations.

Appellant and Ms. Fernandez agreed that Appellant would leave the marital residence and get counseling. Ms. Fernandez stated that she tried to be romantic with Appellant. However, Ms. Fernandez made an ultimatum towards Appellant that he needed to tell a therapist, or she would say to the police what D.W, disclosed to her. The record reflects multiple threads of communication where Appellant and Ms. Fernandez discussed therapy.

Eventually, Ms. Fernandez got tired of Appellant failing to follow through on his commitment to talk to a counselor about what happened with D.W. Finally, on June 2, 2020, Ms. Fernandez alerted authorities and revealed the incident that D.W. had brought to her. The disclosure [led to] a cascade of interviews and the ultimate arrest of Appellant.

Trial Ct. Op., 12/5/22, at 1-3 (formatting altered).

On July 1, 2020, the Commonwealth charged Appellant with one count of aggravated indecent assault, one count of corruption of a minor, and two counts of indecent assault. The case proceeded to trial, and a jury convicted Appellant on all four counts.

On October 3, 2022, the trial court sentenced Appellant to an aggregate term of five and one-half to eleven years of incarceration followed by five

years of probation. Specifically, the trial court imposed consecutive terms of five to ten years of incarceration for aggravated indecent assault, six to twelve months of incarceration for one count of indecent assault, and five years of probation for corruption of a minor. **See** N.T., 10/3/22, at 3, 16-17. The second count of indecent assault merged with aggravated indecent assault for sentencing purposes.[3] **See id.**

Appellant filed a timely appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Whether the trial court abused its discretion when it allowed the Commonwealth to present Facebook messages . . . between Appellant and [Ms.] Fernandez regarding the alleged offense committed by Appellant?

2. Whether the trial court's curative instruction to the jury was insufficient to overcome the prejudicial effect of the Commonwealth's evidence, namely the Facebook messages, toward Appellant at trial?

Appellant's Brief at 4.

Appellant first argues that the trial court abused its discretion in admitting evidence of Facebook messages between Appellant and Ms. Fernandez. **See id.** at 11-15. Appellant contends that portions of the Facebook messages are irrelevant and inflammatory, as they characterize

---

[3] The trial court noted that one count of indecent assault merged with aggravated indecent assault because they were part of a single criminal act. **See** N.T., 10/3/22, at 16. However, the second count of indecent assault did not merge because it was a separate criminal act. **See id.**

Appellant as a predator and abuser, and they include Ms. Fernandez's opinions that Appellant should be in jail and on a sex offender list.[4] *See id.* at 15.[5] Finally, with respect to waiver, Appellant notes that "[t]he basis of the relevance objection was never expounded upon by counsel, nor ruled upon by the trial court, but the record shows that it was raised." *Id.* at 15.

The Commonwealth responds that Appellant failed to preserve this issue for appellate review because Appellant did not make a timely and specific objection at trial. Commonwealth's Brief at 12.

Before we review the merits of Appellant's evidentiary claim, we must first determine whether he properly preserved the issue for appellate review. "[T]he applicability of waiver principles . . . is a question of law, over which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Barbour*, 189 A.3d 944, 954 (Pa. 2018) (citations omitted).

Pennsylvania Rule of Evidence 103 provides that in order to preserve an evidentiary issue for appellate review, a party must timely object and state

---

[4] However, Appellant concedes that other portions of the Facebook messages were relevant to establish Ms. Fernandez's and D.W.'s credibility and relevant to the issue of making a prompt complaint. Appellant's Brief at 15.

[5] Although Appellant objected to the lack of authentication of the Facebook messages during trial, Appellant does not present or develop any argument concerning authentication in his appellate brief. *See* Appellant's Brief at 11-16. Accordingly, the issue is waived on appeal. *See Commonwealth v. Felder*, 247 A.3d 14, 20 (Pa. Super. 2021) (stating that issues not developed in the appellant's brief are abandoned and, therefore, waived). Appellant's argument focuses only on relevance. *See* Appellant's Brief at 11-16.

"the specific ground, unless it was apparent from the context." Pa.R.E. 103(a)(1)(B). The failure to make a timely and specific objection waives that claim on appeal, and "a litigant may not raise a new theory for an objection made at trial in his appeal." **Commonwealth v. T.B.**, 232 A.3d 915, 922 (Pa. Super. 2020); **see also** Pa.R.A.P. 302(a).

> [This Court] will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The princip[al] rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error. By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial. Additionally, the appellate court should not be required to waste judicial resources correcting a problem that the trial court could have easily corrected if it had been given the opportunity to avoid the necessity of granting a new trial.

**Commonwealth v. Russell**, 209 A.3d 419, 429 (Pa. Super. 2019) (quoting **Fillmore v. Hill**, 665 A.2d 514, 516 (Pa. Super. 1995) (internal citations omitted)). Moreover, "[i]t is beyond cavil that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived." **Commonwealth v. Bond**, 985 A.2d 810, 824 (Pa. 2009) (citation and quotation marks omitted). "The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection there made." **Commonwealth v. Cousar**, 928 A.2d 1025, 1041 (Pa. 2007) (citation omitted).

Here, at trial, the Commonwealth questioned Ms. Fernandez about hand-written notes that she wrote on a dry erase board in her kitchen.

Specifically, Ms. Fernandez testified that while Appellant was on a phone call in the kitchen, she wrote "you touched my daughter" and "you are going to jail." N.T., 5/31/22-6/1/22, at 114-15. The Commonwealth then sought to question Ms. Fernandez about messages that she and Appellant exchanged through Facebook. *Id.* at 115. At that point, the trial court interjected and stated:

> THE COURT: Before you do that, ladies and gentlemen, if I could interrupt at this point, there was a comment made that [Ms. Fernandez] had written on the board you are going to jail and as well as I understand that there's references to jail in the [Facebook] messages.
>
> The only purpose of that is to show not that he's going to receive a punishment, not that he did this, this is a determination for you to make and then finally for me to make in the event you determine that he's guilty. This is just to confirm that they had a dialogue and they discussed it.
>
> I'm asking you not to take into consideration any punishment that may be imposed by the court or any references to jail as being somehow prejudicial as to [Appellant's] rights. I'm sorry to interrupt you.

*Id.* at 115 (formatting altered).

Appellant made no objection to this cautionary instruction. The Commonwealth then introduced the Facebook messages between Appellant and Ms. Fernandez as Commonwealth Exhibit 1. At that time, the following exchange occurred:

> [The Commonwealth]: [Ms. Fernandez], I'm handing you what is marked as Commonwealth's Exhibit 1. Do you recognize that?
>
> Ms. Fernandez]. I do.
>
> [The Commonwealth]. What is that?

[Ms. Fernandez].    Facebook messages between me and [Appellant].

[The Commonwealth].  And those Facebook messages, are those Facebook -- the ones you are looking at, are they a fair and accurate depiction of the messages between you and [Appellant]?

[Ms. Fernandez].  Yes.

[The Commonwealth].  And you recognize them as the messages between you and [Appellant]?

[Ms. Fernandez].  Yes.

[The Commonwealth].  And are they edited or altered in any way?

[Ms. Fernandez].  No.

[The Commonwealth]:  At this time Commonwealth would like to move into evidence what's been marked as Commonwealth Exhibit 1.

THE COURT:  Any objection regarding that, sir?

[Appellant's Counsel]:  **Yes, Your Honor, on relevance grounds.  I don't believe that they've been - - actually, I don't believe they've been authenticated.**

THE COURT:  **Well, she said they were hers.  She recognized them as hers.  They were fair and accurate depictions of the conversations they had on Facebook.  I guess the only other thing is whether or not she recognizes his Facebook name and any way you can tie that Facebook, whatever the heck Facebook is, to him, the social site.**

[Ms. Fernandez]:  Yes.

[The Commonwealth].  I can ask some questions.  Looking at the messages that are in front of you, is there a name at the top?

[Ms. Fernandez].  Anthony.

[The Commonwealth].  And who -- you took these screenshots, correct?

[Ms. Fernandez].  I did.

[The Commonwealth].  And who did you know that Anthony to be?

- 8 -

[Ms. Fernandez]. Anthony, my husband [Appellant].

[The Commonwealth]. [Appellant]?

[Ms. Fernandez]. Yes.

[The Commonwealth]. And there's a little picture next to the name. Do you recognize that picture?

[Ms. Fernandez]. Yes. That's a picture with him with a filter on his face.

[The Commonwealth]. And is that what you recognized him to have as his picture at the time that you took this screenshot?

[Ms. Fernandez]. Yes.

[The Commonwealth]. And going through, if you can just flip briefly through the messages, do you recognize them as messages that you had with [Appellant]?

[Ms. Fernandez]. Yes. All of them.

[The Commonwealth]: At this time Commonwealth would like to move into evidence what's been marked as Commonwealth Exhibit 1.

THE COURT: Satisfied that they've been authenticated?

[Appellant's Counsel]: Same objection, Judge.

THE COURT: Okay. Well, I'll allow them to be admitted into evidence. I believe they do meet the criteria as evidence.

N.T., 5/31/22-6/1/22, at 116-119 (emphasis added).

In its Rule 1925(a) opinion, the trial court concluded that Appellant waived his claim concerning the relevance of the Facebook messages because he ultimately challenged the evidence on a different basis during trial. Specifically, the trial court explained:

After reviewing the transcript from the trial, the [c]ourt believes [] Appellant did not preserve the issue for appeal on whether testimony surrounding Commonwealth[ Exhibit 1] was relevant.

Issues not raised to the trial court are waived and cannot be raised for the first time on appeal. In order to preserve an issue for review, a party must make a timely and specific objection. Also, an appellant may not raise a new theory for an objection made at trial on his appeal.

In the present matter, the record reflects that [] Appellant objected on relevance grounds; however, [] Appellant argued a whole different theory as to why the court should not admit Commonwealth[ Exhibit 1].

\* \* \*

[This court] submits that [] Appellant failed to clarify his objection to Commonwealth[ Exhibit 1]. The entirety of the argument presented to the [c]ourt was the theory that the electronic records were falsified and inauthentic. [] Appellant even argued that Ms. Fernandez manipulated the messages in a way that incriminated Appellant. *See* [N.T., 5/31/22-6/1/22] at 89, 197, 202. In fact, that was [] Appellant's entire theory of the case, which was [that these events] did [not] happen, and Ms. Fernandez had fabricated the evidence to make [] Appellant look guilty. [] Appellant has waived his objection on relevance grounds and therefore has not adequately preserved his appellate rights on this grounds that the electronic communication was irrelevant.

Trial Ct. Op., 12/5/22, at 5-7 (some citations omitted and formatting altered).

After careful review, we are constrained to disagree with the trial court's conclusion that Appellant failed to preserve his objection to relevance. As we have noted, Appellant initially objected to the Facebook messages based on relevance and lack of authentication. *See* N.T., 5/31/22-6/1/22, at 117, 119. Although the trial court focused on and specifically addressed authentication and the Commonwealth questioned Ms. Fernandez on authentication, Appellant did not withdraw his objection to relevance. Indeed, when the trial court asked if Appellant had an objection to the admission of the Facebook messages after the initial exchange, Appellant reiterated: "same objection."

*See* N.T., 5/31/22-6/1/22, at 119. Therefore, we conclude that Appellant properly preserved his claim.[6, 7]

The admissibility of evidence is solely within the discretion of the trial court, and the trial court's evidentiary rulings will be reversed on appeal only upon an abuse of discretion. *Commonwealth v. Gallaway*, 283 A.3d 217, 222–23 (Pa. 2022). "As a general rule, the threshold inquiry with admission of evidence is whether the evidence is relevant." *Commonwealth v. Sami*, 243 A.3d 991, 998 (Pa. Super. 2020) (formatting altered and citation omitted). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402.

> Evidence is relevant if it logically tends to establish a material fact
> in the case or tends to support a reasonable inference regarding

---

[6] Because the trial court did not rule on the relevance objection but ultimately admitted the Facebook messages into evidence, we conclude that the trial court effectively overruled Appellant's objection. *See, e.g., Commonwealth v. Wilson*, 402 A.2d 1027, 1029 (Pa. 1979) (concluding that, although the trial court did not specifically overrule an objection, it effectively overruled the objection based on a fair reading of the record and review of the proceedings); *Commonwealth v. Martin*, 2019 WL 6652176, at *8 (Pa. Super. filed Dec. 6, 2019) (concluding that although there was no specific ruling, the trial court effectively overruled an objection based on review of the proceedings) (unpublished mem.); Pa.R.A.P. 126(b) (providing that the unpublished, non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[7] Although we conclude the relevance objection was preserved, we note that Appellant did not refer to specific language or portions of the Facebook messages to support his relevance objection and did not cite a rule of evidence. Moreover, as noted above, Appellant conceded that the Facebook messages were relevant to the issues of credibility and prompt complaint. *See* Appellant's Brief at 15.

a material fact. . . . However, a trial court may exclude relevant evidence if its probative value is outweighed by a danger of, among other things, unfair prejudice. Pa.R.E. 403. "Unfair prejudice" is "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, Comment. In determining whether evidence should be admitted, a trial court must weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence.

*Gallaway*, 283 A.3d at 223 (some citations omitted).

Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged.

*Commonwealth v. Becher*, 293 A.3d 1226, 1239–40 (Pa. Super. 2023) (citation omitted); *Commonwealth v. Danzey*, 210 A.3d 333, 342 (Pa. Super. 2019). "Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007). A relevant consideration in a sexual abuse case is the presence or absence of a prompt complaint, and a prompt complaint is a factor in determining credibility. *See id.* at 134, 138. Further, we agree with the trial court that suicidal ideation is relevant and admissible to show

consciousness of guilt.[8]  *See Commonwealth v. Sanchez*, 610 A.2d 1020,

1028 (Pa. Super. 1992).[9]

In his brief, Appellant cites the following Facebook messages and claims

that they were not relevant and that they were more prejudicial than

probative:

> [Appellant]: Is my therapist a physcactrist [sic]?
>
> [Ms.] Fernandez: I believe so.  Should I just call and disclose
>
> [Appellant]: I thought we would allow me to.  So that it could be handled properly
>
> [Ms.] Fernandez: Okay so are you going to on
>
> [Ms.] Fernandez: therapy for [D.W.] now
>
> [Appellant]: Yes I will
>
> [Ms.] Fernandez: Okay then I will wait to talk to my therapist and set up her therapy.  Did you get my money request.  I am just showing [D.W.] how things work too I am setting up the account so she has her own debit card, she won't be carrying around cash. And both me and you can send her money any time she needs it or we want too

---

[8] Further, the trial court instructed the jury concerning consciousness of guilt in reference to the text messages and communications referencing suicide. Notably, Appellant did not object to the consciousness of guilt jury instruction. *See* N.T., 5/31/22-6/1/22, at 246.

[9] Also, the admissibility of then-existing state of mind statements is governed by Pennsylvania Rule of Evidence 803(3).  "Pursuant to the state of mind hearsay exception, where a declarant's out-of-court statements demonstrate her state of mind, are made in a natural manner, and are material and **relevant**, they are admissible pursuant to the exception." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 472 (Pa. 2021) (emphasis added).  While Appellant did not object to the content of the Facebook messages as hearsay, we cite to *Fitzgerald* and Rule 803 only to illustrate that evidence reflecting a witness' state of mind can be relevant evidence.

[Appellant]: You requested from my Chase

Fernandez: No[.]  Welfare I thougjt [sic]

*    *    *

[Ms. Fernandez:] You sexually assaulted her... i am so lost and alone in my head.  I don't know what to do or think.

[Appellant]: Idk how to respond

[Ms.] Fernandez: It passes [sic] me off that I have to say this … SAY YOU ARE SORRY!!!  AT THE VERY LEAST

[Appellant]: I am sorry for my actions

[Ms.] Fernandez: That seems so fake

[Appellant]: I mean it and I'm having just as big of a struggle as you are.

[Ms.] Fernandez: I am getting more angry, as time goes on!  How? Do you feel like you should kill yourself? Do you feel like you are making the wrong choice and you should just go to jail?

[Appellant]: I feel suicidal yes.  I know I can't kill myself or go to jail because if all I have left is to provide a secure future for the kids.  That's all I'm useful for now is slaved [sic].

*    *    *

[Ms.] Fernandez: How dare you even consider accusing me of anything.  I should just call the police have you arrested and divorce you.  Because a relationship with you will never fucking happen again

[Appellant]: I'm sorry

*    *    *

[Ms.] Fernandez: I know what the repercussions would be on the family.  And still I feel like not putting you in jail is going to cause more harm.  Because you think you got away with it and will hurt more children.  You need to be held fully responsible for your actions.  The only reason your [sic] not in jail right now is because she understands what would happen to his other kids lives right now.

*    *    *

[Ms.] Fernandez: … The kids need their dad, but they don't need a predator in their lives.  The house and cars and money is all great but at what cost am I making them pay. … I am going to let her know that she is not obligated to spend anytime with people who support her abuser.

\* \* \*

[Ms.] Fernandez: I am reading articles after articles on line and everything says that I only making the abuse worse for her by not putting you in jail already.

\* \* \*

[Ms.] Fernandez: … We need to seriously start talking about what will happen if you do go to jail.

\* \* \*

[Ms.] Fernandez: … You have to pay for your actions. I don't believe that jail is the best thing for everyone.  But extreme therapy, probation, and the sex offenders list.

Appellant's Brief at 11-13 (quoting Commonwealth Exhibit 1) (formatting altered and internal citations omitted).

As we have discussed herein, all prosecution evidence is intended to be prejudicial against the defendant and "exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Becher*, 293 A.3d at 1239–40.  Instantly, the Facebook messages were highly probative and relevant to establish Ms. Fernandez's state of mind, the credibility of D.W. and Ms. Fernandez, and both the history and natural development of the events and underlying the criminal offenses. *See Dillon*, 925 A.2d at 136.  Further, the messages revealed Appellant's apologies for his actions and suicidal ideation, which are relevant to show consciousness of

guilt. **See Sanchez**, 610 A.2d at 1028. Therefore, we conclude that the probative value of the Facebook messages outweighed the danger of unfair prejudice, therefore, the trial court did not abuse its discretion by admitting that evidence at trial.[10] **See Gallaway**, 283 A.3d at 222-23. Accordingly, Appellant is not entitled to relief on this claim.

In his final claim, Appellant reiterates his assertion that the Facebook messages were unfairly prejudicial, and he argues that the trial court's instruction was insufficient to cure the prejudice, as no curative instruction

_____

[10] Further, we agree with the trial court that even if there were any errors in admitting the evidence challenged by Appellant, it would be *de minimis* and harmless considering the unequivocal and overwhelming evidence of guilt supported by the record. **See** Trial Ct. Op., 12/5/22, at 10; **see also, Commonwealth v. Kuder**, 62 A.3d 1038, 1057 (Pa. Super. 2013) (explaining that even if certain statements were erroneously admitted into evidence, the error was harmless where the sexual abuse victim's testimony was unequivocal and supported by other evidence). Complainant, D.W.'s unequivocal testimony detailing Appellant's sexual abuse of her, which the jury credited, was legally sufficient to support the jury's decision to convict Appellant. Similarly, Ms. Fernandez did not equivocate in her testimony, which the jury was entitled to consider in its decision. It is axiomatic that the jurors were free to believe all or part or none of the witness testimony in its deliberations. Notably, the focus of Appellant's argument was that the Facebook messages referred to jail, the "sex offender's list," called Appellant a predator, and disparaged Appellant. Appellant's Brief at 15. Appellant asserted that this information was inflammatory. **Id.** However, Appellant concedes that portions of the text would have been admissible to prove credibility and prompt complaint as to Ms. Fernandez and D.W. **Id.** On this record, we agree with the trial court that the portions of the Facebook messages objected to by Appellant, including Appellant's suicidal ideation and consciousness of guilt, which were included in the trial court's instructions to the jury, and not objected to by Appellant, were admissible for the jury to consider. **See Becher**, 293 A.3d at 1239–40; **Danzey**, 210 A.3d at 342; **Dillon**, 925 A.2d at 136; **Sanchez**, 610 A.2d at 1028.

could remove the prejudicial effect of the Facebook messages. Appellant's Brief at 17-18. We disagree. Appellant did not object to the trial court's curative instruction at trial, therefore this claim is waived. *See* N.T., 5/31/22-6/1/22, at 116; *T.B.*, 232 A.3d at 922; *Russell*, 209 A.3d at 429. For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/23/2023