J-S15020-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODERICK CEPHAS | : | |
| | : | |
| Appellant | : | No. 1208 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 31, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001889-2023

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 4, 2026**

Roderick Cephas (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of third-degree murder, persons not to possess firearms, and carrying a firearm on public streets in Philadelphia.[1]  After careful review, we affirm.

The trial court summarized the underlying facts as follows:

On August 24, 2022, at approximately 7:45 p.m., [Appellant] and his friend[,] Shawn Lloyd [(Lloyd),] went to Sunrise Deli, located at 2901 North 27th Street in North Philadelphia, to purchase beer and cigarettes.  N.T., 11/21/24, at 38, 40-42; N.T., 11/22/24, at 27-30, 46; Commonwealth Exhibit C-21 (Video Compilation). Upon leaving the deli, [Appellant] and Lloyd came into contact with the decedent, Nyher Griffin [(Griffin or the decedent)], as

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 6105(a)(1), 6108.

well [as] Griffin's cousin, Imani.[2] N.T., 11/21/24, at 40-42, 106; N.T., 11/22/24, at 31-33; Commonwealth Exhibit C-21 (Video Compilation). At some point during their interaction, Griffin slapped [Appellant] across the face[,] before the four people parted ways. N.T., 11/21/24, at 108-09; N.T., 11/22/24, at 19, 35-37.

Around this same time, Griffin called Dwayne Burden [(Burden)], a cousin of both [Appellant] and Griffin. N.T., 11/21/24, at 101, 105, 128. After speaking with Griffin, Burden drove to the intersection of Taney and Cambridge Streets in North Philadelphia, picked up Griffin, and [drove] to 2823 North 26th Street, [which was the] house where [Appellant] was living at the time. *Id.* at 105-07, 133. According to Burden, the pair went to the house because the property was a family home that originally belonged to Burden's grandmother, and once Burden found out [Appellant] was staying at the home, Burden wanted to get information from [Appellant] about buying the property back. *Id.* at 101-05, 114.

Upon arriving at the 2800 block of 26th Street at approximately 8:20 p.m., Burden saw [Appellant] standing on the sidewalk outside the front of the home. *Id.* at 108. Burden then double-parked his vehicle, a red Kia, on the street in front of the home, and Griffin exited from the passenger side of the Kia. *Id.* As soon as Griffin exited the Kia and began to walk around the back of the car, Burden immediately heard [Appellant] yell "why you slap me," followed by the sound of multiple gunshots. *Id.* at 108-09. At that time, Burden looked into his driver-side mirror and saw Griffin fall to the ground and try to crawl back to the Kia. *Id.* at 110. As Griffin was on the ground, [Appellant] came from behind Griffin, stood over … him, and shot him multiple times. *Id.* [Appellant] then pointed his gun at Burden's car, at which point Burden drove off[. Burden] return[ed] less than a minute later to pick up Griffin and take him to Temple University Hospital. *Id.* at 110-12.

Upon arrival at [the hospital], police helped Burden transfer Griffin, who was suffering from multiple gunshot wounds, from the back of the Kia into the hospital. *Id.* at 6. Griffin was pronounced dead at approximately 9[:00] p.m. *Id.* at 8, 27. Philadelphia Assistant Medical Examiner Dr. Hannah Kastenbaum [(Dr.

_____

[2] Imani's last name is not included in the trial transcript.

> Kastenbaum)] determined that Griffin's cause of death was multiple gunshot wounds, and the manner of death was homicide. *Id.* at 17. [Appellant] was prohibited from possessing a firearm on the date of the murder due to a previous conviction for aggravated assault. N.T., 11/25/24, at 16-17; Commonwealth Exhibit C-34 (Certified Court Document).

Trial Court Opinion, 7/18/25, at 3-4 (some record citations modified; original footnote omitted; one footnote added).

The Commonwealth subsequently charged Appellant with the above offenses, as well as one count of possessing an instrument of crime (PIC).[3] The matter proceeded to a jury trial on November 21-25, 2024. Pertinently, Appellant testified that he shot Griffin in self-defense. At the trial's conclusion, the jury convicted Appellant of the above offenses and acquitted him of PIC. The trial court ordered the preparation of a pre-sentence investigation (PSI) report and scheduled a sentencing hearing.

On January 31, 2025, the trial court imposed an aggregate sentence of 27 to 54 years' imprisonment, including 20 to 40 years for third-degree murder; a consecutive term of 7 to 14 years for persons not to possess firearms; and a concurrent term of 1½ to 3 years for carrying a firearm on public streets in Philadelphia. Appellant filed a timely post-sentence motion, which the trial court denied.

---

[3] 18 Pa.C.S.A. § 907(a).

Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant presents the following questions for our review:

1. Whether the verdict was against the weight of the evidence where the Commonwealth's case rested entirely on the testimony of a single, repeatedly-impeached eyewitness whose account was inconsistent, implausible, and contradicted by the video and physical evidence, and where Appellant's testimony that he acted in self-defense was corroborated by the video and surrounding circumstances[?]

2. Whether the trial court abused its discretion in admitting improper opinion testimony from the lead detective who told the jury there was "no evidence" of another gun and thereby conveyed his personal belief that Appellant was lying, in violation of Pa.R.E. 608 and long-settled case law prohibiting credibility opinions by police witnesses[?]

3. Whether the trial court imposed a manifestly excessive and unreasonable sentence by imposing consecutive[,] standard-range terms totaling twenty-seven to fifty-four years' imprisonment, which could effectively be a life sentence for a forty-eight-year-old defendant, without articulating any individualized rationale, by double-counting prior convictions, and by failing to meaningfully consider the mitigating evidence presented[?]

Appellant's Brief at 5-6.

In his first issue, Appellant argues the trial court erred in denying his post-sentence motion for a new trial, which asserted the verdict was against the weight of the evidence. *See id.* at 25-35.[4] Appellant asserts "the

_____

[4] Appellant's weight argument focuses on his third-degree murder conviction. *See* Appellant's Brief at 25-35. He presents no argument that the guilty verdicts on the two firearm charges were against the weight of the evidence. *(Footnote Continued Next Page)*

- 4 -

Commonwealth's case depended entirely on the testimony of Burden," but "Burden's testimony was objectively false." *Id.* at 27. Appellant notes Burden "was serving a sentence for the *crimen falsi* offense of felony robbery at the time of [Appellant's] trial." *Id.* According to Appellant, Burden "had somehow received an incredibly lenient sentence" for his robbery conviction, and therefore had "every incentive to testify favorably for the Commonwealth even if the Commonwealth had not explicitly promised him anything." *Id.*

Appellant maintains that Burden's "story made no sense" and "was obviously absurd." *Id.* at 27, 28. Appellant claims Burden "was obviously lying" when he testified that he drove with Griffin to Appellant's residence in order to discuss with Appellant the purchase of the residence. *Id.* at 28. Appellant argues that, given the confrontation between Appellant and Griffin at the deli, "it does not require much of a guess to figure out why [Burden drove to Appellant's residence] after receiving a phone call from [Griffin]." *Id.*

Appellant also identifies purported inconsistencies and contradictions in Burden's testimony. Appellant argues Burden testified at Appellant's preliminary hearing that he had not seen a gun during the incident; whereas Burden testified at trial that after he heard gunshots, he saw Appellant with a

_____

*See generally id.* The trial court treated Appellant's weight claim as challenging only his third-degree murder conviction. *See* Trial Court Opinion, 7/18/25, at 11. To the extent Appellant's weight claim purports to challenge the firearm convictions, it is waived. *See Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 884-85 (Pa. Super. 2019) (stating that where an appellant fails to develop an argument on appeal, the issue is waived).

- 5 -

gun.  *Id.* at 27; *see also* N.T., 11/21/24, at 136-37.[5]  Appellant also contrasts Burden's testimony that Griffin's cousin, Imani, rode with Burden and Griffin to the hospital after the shooting, Appellant's Brief at 28, with the testimony of Officer Gregory Giacomelli (Officer Giacomelli), asserting the officer "confirmed that there was definitely no female passenger" in the vehicle with Burden and Griffin upon their arrival at the hospital.  *Id.* at 7-8 (citing N.T., 11/21/24, at 10).[6]

Finally, Appellant argues that he "testified credibly and far more consistently with the evidence that he acted in self-defense."  *Id.* at 29. Relying on his own trial testimony, Appellant maintains he "was attacked by [Griffin,] who was high on meth, at the [deli] for no reason."  *Id.*  "Instead of retaliating," Appellant "went home and sat on his own steps."  *Id.*  Appellant contends Griffin "called for backup … in the form of Burden," and Griffin then "rode with Burden to Appellant's house to kill him."  *Id.*  Appellant asserts the video evidence "did not show what actually happened," but it nevertheless

_____

[5] In his own trial testimony, Appellant agreed he had a gun at the time in question.  *See* N.T., 11/22/24, at 40-41.

[6] Contrary to Appellant's characterization, Officer Giacomelli did not testify that there was "definitely" no female passenger.  Asked how many people were in the vehicle, Officer Giacomelli testified, "I remember it was the male driver and I remember the male in the backseat."  N.T., 11/21/24, at 10. Asked whether there was a female passenger, Officer Giacomelli responded, "I don't believe so.  I don't remember."  *Id.*  The Commonwealth notes that Appellant himself testified there was a woman in Burden's vehicle ("the same one from earlier") when Burden returned to the scene of the shooting to pick up Griffin.  Commonwealth Brief at 11 (quoting N.T., 11/22/24, at 45).

confirmed that Burden and Griffin went to Appellant's residence after "some kind of earlier incident" between Appellant and Griffin. *Id.* at 29-30. Appellant argues his own testimony was therefore "far more consistent with the other evidence than the testimony of Burden." *Id.* at 29.

Appellant maintains the trial court erred when, in rejecting his weight claim, it determined the jury was free to believe Burden and disbelieve Appellant. *Id.* at 33. Appellant argues "the jury's verdict rested entirely on testimony that no reasonable fact-finder could credit," and "the trial court's conclusion that the verdict does not shock its conscience cannot be reconciled with the record and [Burden's] preposterous testimony." *Id.* at 34-35.

Our standard of review of a weight claim is well settled:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Williams*, 255 A.3d 565, 580 (Pa. Super. 2021) (citation omitted).

When a weight challenge "is predicated on the credibility of trial testimony, [appellate] review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Kling*, 351 A.3d 1274, 1290 (Pa. Super. 2026) (citation omitted); *see also Commonwealth v. Wright*, 314 A.3d 515, 524 (Pa. Super. 2024) ("[I]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court."). "Any conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve." *Commonwealth v. Wallace*, 244 A.3d 1261, 1276 (Pa. Super. 2021) (citation omitted).

Further,

[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [as to whether] the verdict is against the weight of the evidence.

*Id.* (citation omitted); *see also Commonwealth v. Sanchez*, 262 A.3d 1283, 1288 (Pa. Super. 2021) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court."). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of

the evidence." ***Commonwealth v. Weitzel***, 304 A.3d 1219, 1227 (Pa.

Super. 2023) (citation omitted).

Instantly, in connection with its analysis of Appellant's weight claim, the

trial court detailed the evidence adduced at trial as follows:

> While [Appellant] testified at trial that he acted in self-defense, ***see*** N.T., 11/22/24, at 25-55, the Commonwealth presented compelling evidence that [Appellant] murdered the unarmed decedent, Griffin. Specifically, the Commonwealth presented the testimony of eyewitness [] Burden.
>
> Burden testified that, on the night of the murder, he received a call from his cousin, [] Griffin, at approximately 7:45 p.m. N.T., 11/21/24, at 101, 105, 128. Burden stated that he was in Center City when he received Griffin's call, and drove up to see Griffin in North Philadelphia in response to the call. ***Id.*** at 105-06. Burden drove to the intersection of Cambridge and Taney Streets in North Philadelphia, at which point he saw Griffin and Burden's other cousin, Imani. ***Id.*** at 106. According to Burden, Griffin got into the passenger seat of Burden's car, and the pair drove around the corner to the family house where [Appellant] was living, that is, 2823 North 26th Street. ***Id.*** at 106-07, 129-30. Burden testified that [Appellant] was also his cousin, and that [Burden] and Griffin went to the house because the property was a family home, owned at that time by Burden's aunts, and that Burden wanted to buy the home. ***Id.*** at 101-05, 114, 130-31.
>
> Burden stated that when he and Griffin pulled on to the 2800 block of North 26th Street, [Appellant] was standing in front of the family home on the sidewalk. ***Id.*** at 108. Burden stopped his car and double-parked between the family home and the house next door, at which point Griffin got out of the car and began to walk behind it. ***Id.*** at 107-08. Burden testified that, almost immediately after Griffin exited the car, Burden heard [Appellant] yell "why you slap me," followed by the sound of gunfire. ***Id.*** at 108-09. Burden, still in the Kia, looked out his driver's side window and saw Griffin fall to the ground. ***Id.*** at 110. Burden stated that he saw Griffin attempting to crawl back to the Kia, when [Appellant] came from behind Griffin, stood over … [Griffin], and shot him multiple times. ***Id.*** Burden testified at that point,

[Appellant] pointed the gun at [Burden's] car, and Burden drove off. *Id.*

Burden testified that he drove back to the intersection of Taney and Cambridge Streets to pick up Imani for help. *Id.* at 110-11. The pair then drove directly back to 2823 North 26th Street, put Griffin in the Kia, and drove to Temple [University] Hospital. *Id.* at 111-12. Burden testified that he did not see Griffin with a firearm on the night of the murder, and that [Burden] himself did not have a firearm that night. *Id.* at 112-13.

Trial Court Opinion, 7/18/25, at 6-8 (some record citations modified; footnote omitted).

The trial court determined Burden's testimony was corroborated by substantial evidence, summarized as follows:

Burden's testimony was corroborated by Ring camera footage that was collected from a neighboring house at 2821 North 26th Street. Specifically, the Ring camera showed Griffin lying in the street in front of [Appellant's] house, still moving and yelling "I'm sorry," as well as [Appellant] walking behind Burden's car and pointing a gun at the car as it drove away. *Id.* at 41-45, 122; Commonwealth Exhibit C-21 (Compilation Video). The video also showed that, immediately following the shooting, [Appellant] could be heard telling neighbors to "cut the fucking cameras off," which was compelling evidence of [Appellant's] consciousness of guilt. N.T., 11/22/24, at 11; Commonwealth Exhibit C-21 (Compilation Video).

Additionally, the Commonwealth presented the testimony of Philadelphia Police Officers [] Giacomelli and Gregory Yatcilla [(Officer Yatcilla)], as well as Detective Derrick Venson [(Detective Venson)]. Officer Giacomelli testified that, after receiving notice of a 911 call regarding the instant murder, he responded to Temple University Hospital. N.T., 11/21/24, at 5-6. Soon after Officer Giacomelli arrived at [the hospital], Burden and Griffin arrived in the red Kia, and Griffin was taken inside the hospital. *Id.* at 6. According to Officer Giacomelli, Burden was cooperative with police, gave police consent to search his vehicle,

and no firearms were recovered from the red Kia, Burden, or Griffin. *Id.* at 6-7.

[] Officer Yatcilla testified that he collected four, nine-millimeter fired cartridge casings from the crime scene, all of which were found in the area where Griffin was shot multiple times, that is, on the street in front of 2823 North 26th Street. *Id.* at 76-77. Officer Yatcilla further testified that since the casings were all found together, it is likely that the bullets were fired from the same gun. *Id.* at 77-78, 95.

Detective Venson testified that no firearms were ever recovered in the course of the investigation, and that there was no evidence to support that there was another firearm at the crime scene during the murder[,] other than the gun with which [Appellant] killed Griffin. N.T., 11/22/24, at 11-12, 62.

Finally, … Dr. Kastenbaum testified that she conducted an autopsy of Griffin, and that she observed that Griffin had suffered from five gunshot wounds: one to the left forearm, one to the right upper chest, one to the back of the neck, one to the right lower back, and right upper back. N.T., 11/21/24, at 17-18. She further testified that the gunshot wounds to [Griffin's] right upper back, right lower back, and the back of [Griffin's] neck were entrance wounds, indicating that Griffin was shot from behind at some point. *Id.* at 21, 26-27, 32; Commonwealth Exhibits C-32S, C-32U, and C-32W (Autopsy Photos).

All of this evidence established that [Appellant] intentionally shot Griffin, who was unarmed and, at one point, crawling away from [Appellant], after [Appellant had been] slapped by Griffin during a separate incident outside of Sunrise Deli, which occurred about 30 minutes before.

Trial Court Opinion, 7/18/25, at 8-9 (some record citations modified).

The trial court also summarized Appellant's own testimony:

[Appellant] testified at trial that he acted in self-defense. Specifically, [Appellant] testified that during his interaction with Griffin outside of Sunrise Deli, Griffin threatened to kill [Appellant] and slapped him across the face with a gun. N.T., 11/22/24, at 34-35. [Appellant] stated that, at that time, Griffin had two guns, one of which [Appellant] was able to take from Griffin, and the other of which "flew out [of Griffin's] hand" and slid down the

- 11 -

sidewalk when Griffin hit [Appellant] with it. *Id.* at 36-38; Commonwealth Exhibit C-21 (Video Compilation). [Appellant] stated that, after being hit, he ran away from Griffin with one of the guns, did not attempt to pick up the second gun, and went home. N.T., 11/22/24, at 37-38.

[Appellant] further testified that, shortly after this altercation, he was sitting on the steps outside of his home with the gun he had taken from Griffin, when Griffin and Burden arrived on his block. *Id.* at 38-40, 43. He stated that, as soon as Griffin and Burden arrived, Griffin got out of the car, tried to hide behind the parked cars on the street, and pointed a gun at [Appellant], at which point [Appellant] shot Griffin multiple times. *Id.* at 40. [Appellant] testified that after he shot Griffin, Griffin crawled on the ground trying to get his gun back, at which point [Appellant] picked up the second gun, that is, the gun that Griffin arrived with. *Id.* at 40-41. [Appellant] stated that, after picking up the second gun, he pointed one of the guns at Burden's car, and Burden drove away. *Id.* [Appellant] testified that he then put both of the guns inside his house,[7] and left the scene at some point after Burden returned to pick up Griffin. *Id.* at 40-45.

[Appellant's] testimony was the only evidence presented at trial suggesting that he acted in self-defense, and it was refuted by the Commonwealth's evidence described above. In particular, there was no evidence of more than one firearm at the crime scene. In addition, [Dr. Kastenbaum's] testimony corroborates Burden's account that Griffin was shot in the back while crawling away from [Appellant]. Moreover, rather than claiming self-defense and contacting the police, [Appellant] fled the scene. *See id.* at 49-50, 53-54.

Trial Court Opinion, 7/18/25, at 9-10 (some record citations modified; footnote added).

In rejecting Appellant's weight claim, the trial court set forth the following analysis and conclusion:

---

[7] Although Appellant's self-defense claim rested heavily on his assertion that two guns were involved, he never produced either gun. *See* N.T., 11/22/24, at 44, 53-54, 62.

It is true that Burden had an admissible *crimen falsi* conviction for robbery when he testified at [Appellant's] trial. N.T., 11/21/24, at 98[; *see also Calisto v. Rodgers*, 271 A.3d 877, 885 (Pa. Super. 2022) ("Robbery … [is] considered *crimen falsi* and convictions for [robbery] are admissible for impeachment purposes").] It is also true that Officer [] Giacomelli testified that only Burden and Griffin were in Burden's car when Burden arrived at Temple [University] Hospital, whereas Burden testified that he arrived at [the h]ospital with both Griffin and his cousin, Imani. N.T., 11/21/24, at 5-6, 9-10, 126. In addition, Burden testified at [Appellant's] preliminary hearing that he had never seen [Appellant] with a gun, while at trial he said that although he had not initially seen [Appellant] with a gun, he saw [Appellant] with a gun[,] standing over Griffin[,] after the first round of gunshots were fired. *Id.* at 135-37. None of this impeachment evidence rendered Burden to be an incredible witness.

Moreover, credibility determinations are solely within the province of the fact-finder, and a court may not reweigh the evidence and substitute its judgment for that of the [fact-]finder…. *Commonwealth v Taylor*, 63 A.3d 327, 330 (Pa. Super. 2013). [During] cross-examination of Burden, defense counsel highlighted Burden's robbery conviction, his resulting potential bias in favor of the Commonwealth, and the purported inconsistencies between his preliminary hearing testimony and trial testimony[. T]he jury nonetheless accepted Burden's version of events. *See* N.T., 11/21/24, at 125-42. Moreover, the Commonwealth presented the testimony of Assistant District Attorney Kolleen McMullen, who testified that Burden did not receive any benefit with regard to his robbery case in exchange for [his testimony at Appellant's] trial[.] *See id.* at 143-46. [The Commonwealth also presented] evidence that [Burden had] already [been] sentenced for his robbery charge prior to his testimony at [Appellant's] preliminary hearing, thereby undermining [Appellant's] claim that Burden was a biased witness. *Id.* at 100.

Additionally, as noted above, Burden's testimony was corroborated by the Ring camera video, ballistic evidence, and [Dr. Kastenbaum's] report, none of which Burden had access to at the time he gave his statement to police. N.T., 11/21/24, at 113-14; N.T., 11/22/24, at 6-8. Despite [Appellant's] assertion that his version of events was "far more consistent with the other evidence," [Appellant's] testimony was the only evidence at trial

supporting his self-defense claim, and the jury was free to reject his testimony.

Accordingly, the evidence presented at trial fully supported the jury's conviction for third-degree murder, and did not shock the conscience of the [trial c]ourt. **See Commonwealth v. Talbert**, 129 A.3d 536, 545-46 (Pa. Super. 2015). No relief is due.

Trial Court Opinion, 7/18/25, at 12-13 (some citations modified).

We agree with the trial court's analysis and conclusion. We reiterate that appellate review of weight challenges "predicated on the credibility of trial testimony … is extremely limited," **Kling**, 351 A.3d at 1290, and "[a]ny conflicts in the evidence or contradictions in testimony are exclusively for the fact-finder to resolve." **Wallace**, 244 A.3d at 1276. Our review of the record confirms that the purported inconsistencies and contradictions in Burden's testimony were well within the province of the jury to resolve. We discern no abuse of the trial court's discretion in its rejection of Appellant's weight claim. Accordingly, Appellant's first issue merits no relief.

In his second issue, Appellant argues the trial court erred in admitting certain rebuttal testimony from Detective Venson,[8] which Appellant contends constituted improper opinion testimony. **See** Appellant's Brief at 35-42. Specifically, Appellant argues Detective Venson opined that an object Appellant could be seen picking up in Ring video footage was not a gun. **Id.** at 38. The footage in question depicted the immediate aftermath of the

_____

[8] After Appellant testified at trial, the Commonwealth recalled Detective Venson to testify in rebuttal. **See** N.T., 11/22/24, at 59-65.

shooting. *See* Commonwealth Exhibit C-21. Appellant had testified the object

he picked up was the second gun he claimed Griffin had pointed at him upon

Griffin's arrival outside Appellant's residence. *See* N.T., 11/22/24, at 40-41.

We set forth the at-issue portion of Detective Venson's testimony in full:

[The Commonwealth:] Okay. Now I'm drawing your attention to [Exhibit] C-21, which I have on the screen, this Ring camera footage at 10 minutes and 40 seconds.

(Whereupon, Exhibit C-21 was played in the courtroom.)

….

[The Commonwealth:] Now, this point I'm pausing at 11 minutes and 11 seconds. … Do you see [Appellant] on the screen who just bent down?

[Detective Venson:] Yes.

[The Commonwealth:] Let me ask you, during the course of your investigation as you're going through the video footage and working with [the] crime scene, was it your belief that there were any other firearms out there that night besides what [Appellant] held or what the person on the screen has?

[Defense counsel:] Objection.

THE COURT: Sustained as to form.

[The Commonwealth:] **Did you find any other firearms out there or <u>any evidence to support there was another firearm</u> besides the one that the individual on the screen had?**

[Detective Venson:] **No.**

[Defense counsel:] **Objection.**

THE COURT: **I'll allow that.**

[Detective Venson:] **No.**

(Whereupon, Exhibit C-21 was played in the courtroom.)

- 15 -

[The Commonwealth:] And you reviewed this video during your investigation, correct?

[Detective Venson:] Yes.

[The Commonwealth:] Okay. **And in reviewing this video, was there anything about this portion that we just watched— which I have paused at 11 minutes and 15 seconds—that made you believe that there was a firearm that had been picked up by the individual?**

[Defense counsel:] **Objection.**

THE COURT: **Sustained.** … That's argument. You can make argument to the jury based on the video. So can you—

[The Commonwealth:] Understood, your Honor.

N.T., 11/22/24, at 60-63 (emphasis added).

Appellant asserts the trial court erred in overruling defense counsel's second objection and thereby permitting Detective Venson to testify that he did not find "any evidence to support [that] there was another firearm[.]" *Id.* at 62; *see also* Appellant's Brief at 38. Appellant maintains that, via this testimony, Detective Venson improperly opined on what the video did or did not show, and also improperly opined on the credibility of Appellant's testimony that the object was a gun. *Id.* at 38, 40-41. Appellant asserts the Commonwealth "introduced what was in essence 'expert' testimony that an experienced homicide detective was able to tell that the object was not a gun and therefore [Appellant] was lying." *Id.* at 38-39. Appellant argues the trial court should have sustained the objection because "[t]he jury was equally well-equipped to determine the facts[,] as [Detective Venson] had no special

- 16 -

knowledge which would allow him to identify a gun on a video or determine whether Appellant had testified credibly[.]" ***Id.*** at 41.

The Commonwealth counters that, when the prosecutor specifically asked whether Detective Venson believed the object in the video was a gun, the trial court sustained defense counsel's objection. Commonwealth Brief at 15. The Commonwealth argues, "Detective Venson did not testify that [Appellant] was lying, but rather that *there was no evidence* of another firearm discovered through the course of the detective's investigation." ***Id.*** (emphasis in original). The Commonwealth maintains Detective Venson did not give expert opinion testimony or comment on Appellant's credibility, but rather testified only regarding his own observations "about the evidence at the crime scene." ***Id.*** at 16.

We observe the following standard of review:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Brown***, 352 A.3d 1035, 1050 (Pa. Super. 2026) (citation omitted).

Pennsylvania Rule of Evidence 701 provides as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701; *see also Commonwealth v. T.B.*, 232 A.3d 915, 919 (Pa. Super. 2020) ("Fact testimony may include opinion or inferences so long as those opinions or inferences are rationally based on the witness's perceptions and helpful to a clear understanding of his or her testimony").

Further, Rule 702 provides that a witness

who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. "Under longstanding Pennsylvania precedent pertaining to jury trials, … determining witness credibility is exclusively the function of jurors, and expert witnesses are specifically prohibited from invading this province."

*Commonwealth v. Maconeghy*, 171 A.3d 707, 712 (Pa. 2017).

Instantly, the trial court determined the record is clear "that Detective Venson was not permitted to state an opinion as to whether the object that [Appellant] picked up in the Ring camera video was a firearm." Trial Court

Opinion, 7/18/25, at 15. The trial court observed that, "[w]hen the Commonwealth specifically asked Detective Venson whether he believed [Appellant] had picked up a firearm based on his review of the Ring camera video, defense counsel objected, and the [trial c]ourt sustained the objection." *Id.* (citing N.T., 11/22/24, at 62-63). The trial court concluded Appellant's "claim is baseless, and no relief is due." *Id.*

We agree with the trial court. Detective Venson did not specifically opine as to whether the object in the video was a gun. We further agree with the Commonwealth that Detective Venson offered no opinion as to Appellant's credibility. Rather, Detective Venson testified only that he did not find "any evidence to support [that] there was another firearm besides the one that" Appellant used to shoot Griffin. N.T., 11/22/24, at 62. To the extent this testimony implied Detective Venson's belief that the video alone did not amount to "evidence" of a second gun, we observe that, elsewhere in his brief, Appellant concedes that "[i]t was not actually possible to tell [from the video] whether the object that fell to the sidewalk was a gun or a phone…." Appellant's Brief at 29. Thus, Detective Venson's testimony did not invade the jury's province to (1) determine, based on the jury's own observation of the video, whether the object was a gun; or (2) determine the credibility of Appellant's testimony that the object was a gun. We therefore discern no abuse of discretion in admission of Detective Venson's testimony. Appellant's second issue merits no relief.

In his third and final issue, Appellant argues the trial court imposed a manifestly excessive sentence. *See* Appellant's Brief at 42-48.

Preliminarily, we observe "[t]here is no automatic right of appeal from the discretionary aspects of a sentence." *Commonwealth v. Glawinski*, 310 A.3d 321, 325 (Pa. Super. 2024) (citation omitted). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citation omitted). Here, Appellant filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included the required Rule 2119(f) statement in his brief. *See* Appellant's Brief at 20-22.

We next consider whether Appellant presents a substantial question. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. McLendon*, 293 A.3d 658, 670 (Pa. Super. 2023) (quotation marks omitted). In determining whether a substantial question exists, we do not

examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Glawinski*, 310 A.3d at 325 (citation omitted).

Instantly, Appellant's Rule 2119(f) statement asserts the trial court imposed an excessive sentence and failed to consider mitigating factors. *See* Appellant's Brief at 21. This Court has held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citation omitted). We therefore conclude Appellant has raised a substantial question, and we will review the merits of his claim.

Appellant argues the trial court imposed a "manifestly excessive" sentence and failed to "meaningfully consider the statutory factors or Appellant's mitigation [evidence.]" Appellant's Brief at 43. Appellant maintains the trial court gave "no weight" to mitigating factors, *id.* at 45, including Appellant's age (48 years old), the age of his prior convictions, his employment status, community and family support, childhood trauma, and "serious physical and mental health problems, including hypertension, chronic pain from multiple gunshot wounds, and PTSD." *Id.* at 44; *see also id.* (stating Appellant was shot seven times in 1995). Appellant also argues that "even if the jury disbelieved Appellant's claim of complete self-defense," the

trial court should have considered Appellant's version of events, in which Griffin and Burden provoked the fatal confrontation. *Id.* at 46-47.

Additionally, Appellant maintains the trial court "relied heavily on Appellant's prior record score, thereby improperly double-counting his prior record score." *Id.* at 46 (citing *Commonwealth v. Goggins*, 748 A.2d 721, 732 (Pa. Super. 2000) (*en banc*) (stating that "when fashioning a sentence, a sentencing court may not 'double count' factors already taken into account in the [S]entencing [G]uidelines.")). Appellant further asserts the trial court provided no on-the-record reason for its decision to impose consecutive sentences for third-degree murder and persons not to possess firearms. *Id.* Finally, Appellant maintains the aggregate minimum sentence of 27 years' imprisonment "could easily be an effective life sentence," based on Appellant's age and medical problems. *Id.* at 48.

The Commonwealth counters that the trial court had the benefit of a PSI, and must therefore be presumed to have "properly considered and weighed all relevant factors in fashioning the defendant's sentence." Commonwealth Brief at 19 (quoting *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013)). The Commonwealth asserts Appellant does not claim the trial court failed to consider mitigating factors, "but rather that the court weighed those factors in a manner inconsistent with his wishes." *Id.* (quoting *Commonwealth v. Raven*, 97 A.3d 1244, 1255 (Pa. Super. 2014)). The

Commonwealth emphasizes that the trial court imposed standard-range sentences for each of Appellant's convictions. *Id.* at 21-22.

The standard of review we observe "when reviewing the discretionary aspects of sentencing is very narrow." *Commonwealth v. King*, 182 A.3d 449, 454 (Pa. Super. 2018) (citation omitted).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived [at] a manifestly unreasonable decision.

*Commonwealth v. Torres*, 303 A.3d 1058, 1065 (Pa. Super. 2023) (citation omitted).

"In every case in which the court imposes a sentence for a felony … the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b). The Sentencing Code requires the trial court to

> follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

*Id.*; *see also Commonwealth v. Conklin*, 275 A.3d 1087, 1094 (Pa. Super. 2022) (stating "the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." (citation

omitted)). "When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it is not bound by the Sentencing Guidelines." *Commonwealth v. Durazo*, 210 A.3d 316, 320 (Pa. Super. 2019) (citation and brackets omitted).

Additionally,

[w]here the sentencing court had the benefit of a [PSI], we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988); *see also Commonwealth v. Tirado*, 870 A.2d 362, 368 (Pa. Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors). Further, **where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. See Commonwealth v. Cruz-Centeno**, 668 A.2d 536 (Pa. Super. 1995) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

*Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citations modified; emphasis added).

Finally, we observe that

Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. An appellant is not entitled to a "volume discount" on his multiple convictions by the imposition of concurrent sentences.

*Commonwealth v. Lawrence*, 313 A.3d 265, 286 (Pa. Super. 2024) (citation and brackets omitted).

Instantly, in its Rule 1925(a) opinion, the trial court stated that

in fashioning the appropriate sentence, the court explicitly considered the following: the Sentencing Guidelines; everything presented during the history of [Appellant's] case; [Appellant's PSI] report and mental health evaluation; everything submitted during [Appellant's] sentencing hearing; the statements made [during the hearing] on behalf of [Appellant] and on behalf of the decedent; [Appellant's] allocution; [Appellant's] rehabilitative needs; the need for the protection of the public; and the gravity of the offense in relation to the impact on the victim and the community. N.T., 1/31/2025, at 37-39. In addition, the court delineated and weighed both the mitigating and aggravating factors in the case. *Id.* at 39.

While [Appellant] argues that the court erred in sentencing him to an "excessive" aggregate sentence of 27 to 54 years' incarceration, this argument is meritless. [Each] of the sentences imposed by the court … were standard-range sentences. Although the court did run the 7-to-14-year sentence [for] possession of a firearm by a prohibited person [] consecutive to the murder sentence, as the court explained during [Appellant's] sentencing hearing, this was not a "mainstream" third-degree murder case. N.T., 1/31/25, at 39. [Appellant] shot the decedent five times, including four times in vital parts of his body, with a firearm he was prohibited from carrying. *Id.* Additionally, as the court noted during [the] sentencing [hearing, Appellant's] history of violence, which included a previous [first-degree felony] conviction for … aggravated assault, also served as an aggravating factor underlying the court's decision to give [Appellant] a consecutive sentence. *Id.*

Trial Court Opinion, 7/18/25, at 16-17 (some record citations, capitalization, and punctuation modified; footnote omitted); *see also id.* at 17 n.7 (describing in detail the Sentencing Guideline ranges for each of Appellant's convictions).

Our review of the record confirms the trial court had the benefit of a PSI and considered all relevant sentencing factors in fashioning Appellant's sentence. Because the trial court imposed standard-range sentences, its

consideration of Appellant's prior criminal record did not, contrary to Appellant's assertion, constitute "double counting" of that record. Appellant's Brief at 46; *see also Commonwealth v. Messmer*, 863 A.2d 567, 573 (Pa. Super. 2004) (explaining that, in "justifying an *upward departure*" from the Sentencing Guidelines, trial courts "may not include those [factors] already taken into account in the [G]uidelines calculations." (emphasis added)). Rather, in imposing standard-range sentences, the trial court properly acknowledged a factor that informed the Sentencing Guidelines' formulation of the standard ranges. Finally, the trial court had ample discretion to impose consecutive sentences, and Appellant is not entitled to a "volume discount" on his multiple convictions. *Lawrence*, 313 A.3d at 286. We discern no abuse of the trial court's sentencing discretion in imposing Appellant's standard-range sentences. *See Moury*, 992 A.2d at 171. Accordingly, Appellant's third and final issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/4/2026